UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:19-CR-00107-KJM |
| Plaintiff, | |
| v. | ORDER |
| SAMUEL KEETON, | |
| Defendant. | |

Defendant moves to revoke the magistrate judge's March 30, 2020 detention order. Defendant is charged with conspiracy to participate in racketeering in violation of 18 U.S.C. § 1962(d), conspiracy to distribute and possess with intent to distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), distribution of heroin in violation of 21 U.S.C. § 841(a)(1), and distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The court determined this matter is suitable for decision without a hearing and has submitted it on the papers. Having thoroughly considered the parties' briefing and the totality of the record, the court DENIES defendant's motion.

I.  BACKGROUND

On June 14, 2019, the grand jury returned a fourteen-count indictment charging sixteen people, including defendant Samuel Keeton, with conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) and conspiracy to distribute and

1

possess with intent to distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), in addition to the other charges noted above. Indictment, ECF No. 25.

Defendant was arrested on June 4, 2019, *see* ECF No. 134, and arraigned on June 20, 2019, at which point he entered a plea of not guilty. ECF No. 62. At the original June 20 detention hearing, the duty magistrate judge denied defendant's release. Detention Order, ECF No. 65. On August 16, 2019, defendant filed a motion for bail review, ECF No. 143, which the magistrate judge, a different duty judge at that point, denied on August 23, 2019. ECF No. 162. Then, on September 16, 2019, defendant filed a motion in this court to revoke his detention order. ECF No. 193. On September 30, 2019, this court denied defendant's motion to revoke his detention order. ECF No. 227.

On March 25, 2020, defendant filed another motion before the duty magistrate judge for bail review and release on appropriate conditions in light of the coronavirus disease (COVID-19), ECF No. 390, amending the motion on March 26, 2020. ECF No. 391. Defendant also filed a supplemental brief referencing other courts' response to the COVID-19 public health emergency. ECF No. 392. The magistrate judge held a hearing on the motion on March 30, 2020; after consideration of the parties' arguments, the magistrate judge denied defendant's motion from the bench. *See* Hr'g Tr., ECF No. 404. Specifically, the magistrate judge found the COVID-19 virus does not establish a legal basis to release defendant based on defendant's risk of non-appearance and potential risk to the public. Hr'g Tr. at 9. Moreover, the magistrate judge found the reasons for the original detention determination remain unchanged. *Id*.

On April 3, 2020, defendant moved to revoke the magistrate judge's March 30, 2020 order. Mot., ECF No. 403. The government timely opposed. Opp'n, ECF No. 411. Defendant did not file a reply to the government's opposition. The court resolves the motion here.

II.     LEGAL STANDARD

A person "ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . may file, with the court having original jurisdiction over the offense, a motion for

2

1   revocation or amendment of the order.  The motion shall be determined promptly." 18 U.S.C.
2   § 3145(b).  Under this provision, the district court conducts its own de novo review of the
3   magistrate judge's detention order.  *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).
4   The district court "should review the evidence before the magistrate and make its own
5   independent determination whether the magistrate's findings are correct, with no deference." *Id*.
6   at 1193.  "[T]he district court, while empowered to do so, is not required to hold an evidentiary
7   hearing when no evidence is offered that was not before the magistrate." *Id.*

8   The Bail Reform Act imposes a presumption against pretrial release for defendants
9   charged with serious narcotics offenses, as is defendant here.  *See United States v. Moore*, 607 F.
10  Supp. 489, 497 (N.D. Cal. 1985).  "Subject to rebuttal by the [defendant], it shall be presumed
11  that no condition or combination of conditions will reasonably assure the appearance of the
12  person as required and the safety of the community if the judicial officer finds that there is
13  probable cause to believe that the person committed an offense for which a maximum term of
14  imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801
15  et seq.)." 18 U.S.C. § 3142(e)(3)(A).  However, "the government may not rest solely on the
16  rebuttable presumption to support its motion to detain a defendant pending trial." *Moore*, 607 F.
17  Supp. at 498.  The government "retains the burden throughout the proceeding to show by clear
18  and convincing evidence that no condition or combination of conditions would reasonably assure
19  defendant's appearance at trial or the safety of the community." *Id.* at 497.  Moreover, "the
20  Government must establish risk of flight by a clear preponderance of the evidence, not by the
21  higher standard of clear and convincing evidence." *United States v. Motamedi*, 767 F.2d 1403,
22  1406 (9th Cir. 1985).  Also, "[a] finding that a defendant is a danger to any other person or the
23  community must be supported by 'clear and convincing evidence.'" *United States v. Hir*, 517
24  F.3d 1081, 1086 (9th Cir. 2008) (citing 18 U.S.C. § 3142(f)(2)(B)).

25  Title 18 U.S.C. § 3142(g) specifies the various factors to determine whether the
26  court may impose conditions of release that will reasonably assure the appearance of the person.
27  The court must account for available information concerning the nature and circumstances of the
28  offense charged, the weight of the evidence against the person, and the history and characteristics

of the person. 18 U.S.C. § 3142(g). The history and characteristics of the person include the following: character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* The weight of the evidence has the least force in the court's analysis, in recognition of the presumption of innocence that attaches to defendant at the pretrial stage of a criminal proceeding. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979); 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

A separate provision of the statute, 18 U.S.C. § 3142(i) provides a court may temporarily release a detained defendant not only if "such release is necessary for preparation of the person's defense," but also "for another compelling reason." *See* 18 U.S.C. § 3142(i).[1] A defendant bears the burden of establishing circumstances warranting temporary release pending trial under both prongs of § 3142(i). *See United States v. Terrone*, No. 319CR00058RCJCLB, 2020 WL 1844793, at *4 (D. Nev. Apr. 10, 2020); *United States of Am. v. Ryan*, No. 2:19-CR-756-JAK, 2020 WL 1861662, at *2 (C.D. Cal. Apr. 14, 2020) (noting defendant must show "that his medical condition presents 'compelling reasons' for temporary release" under § 3142(i)).

III.    DISCUSSION

The current charges against defendant carry a mandatory minimum sentence of ten years and a maximum sentence of life in prison. Opp'n at 8. Therefore, the Bail Reform Action's presumption against pretrial release exists in this case. Based on the factors enumerated in 18 U.S.C. § 3142(g), the government has shown by clear and convincing evidence that no condition or combination of conditions would reasonably assure defendant's appearance at trial or the safety of the community, as explained below.

---

[1] "The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4).

A.    18 U.S.C. § 3142(g) Analysis

Defendant contends the court's 18 U.S.C. § 3142(g) detention analysis requires it to consider the impact of the COVID-19 pandemic on jails, inmates, and defendant's health. Mot. at 3. Specifically, defendant argues the court should order his release because of his physical condition of having asthma, which increases the risks associated with COVID-19, considering in combination with the nonviolent nature of his offenses, and the possibility of court-ordered monitoring of the defendant upon release. Mot. at 2–3; *see also* ECF No. 400. Defendant is correct that his asthma, assuming a formal diagnosis of that condition as discussed below, does put him in a category for higher risk in the face of COVID-19 if the condition is "moderate to severe" and "not well controlled." *See https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html* (last accessed on April 30, 2020).[2] However, the balance of the § 3142(g) factors weigh against defendant's release and in combination outweigh defendant's physical condition, notwithstanding the seriousness of COVID-19, which the court acknowledges.

As noted above, the nature and the circumstances of the offense charged not only support the court's continuing defendant's detention, but raise a presumption of detention. Defendant and the government disagree over defendant's role in the conspiracy, with the defendant characterizing himself as a "runner," rather than someone with a "critical role." Mot. at 2–3. The government alleges defendant took the following actions as a member of the conspiracy: 1) transporting drugs from Southern California to Sacramento; and 2) transporting a lawyer to Folsom State Prison to participate in a fictitious client meeting. Indictment ¶¶ 31, 35, 57, 59, 60; *see also* Compl., ECF No. 1, at 36–63. While defendant's role is not determinative in the court's decision here, the alleged conspiracy itself suggests defendant should not be released, given that it comprises drug-trafficking throughout the state of California, inside and outside of

---

[2] The court takes judicial notice of the Centers for Disease Control and Prevention document listing people whose medical conditions place them at higher risk for severe illness from COVID-19. *See* Fed. R. Evid. 201(b) (A trial court may take judicial notice of a "fact that is not subject to a reasonable dispute because it: . . . is generally known within the trial court's territorial jurisdiction [or] can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.").

1    state prison facilities.  Indictment ¶¶ 1–2, 9, 12, 13.  The potential risks to the community
2    associated with releasing an alleged member of this conspiracy are high, as the previous detention
3    orders in defendant's case have noted.  *See* ECF Nos. 65, 198, 227, 367, 399, 404.
4            The history and characteristics of defendant also do not weigh in favor of release.
5    Defendant's extensive criminal history and parole status at the time of the alleged offenses are
6    similar to those of defendant in *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857
7    (D. Md. March 17, 2020), cited by defendant in support of his motion.  Mot. at 16.  In *Martin*, the
8    court denied the release of a defendant with extensive criminal history in part because "[w]hen
9    placed on community or court supervision, [defendant] violated his release conditions, and was
10   on court supervision at the time of the conduct currently charged in this case."  *Id*. at *4.  Here,
11   similar to the defendant in *Martin*, the government notes defendant was "paroled to the
12   community [in 2016]," and later that year he was trafficking drugs on behalf of the Aryan
13   Brotherhood."  Opp'n at 11.  In 1999 and 2000, defendant committed two probation violations.
14   *Id.* at 9.  Defendant's prior criminal history also includes vehicle theft, burglary, burglary with a
15   firearm, conspiracy to commit robbery, possession of a controlled substance, and driving under
16   the influence of a controlled substance.  *Id.* at 9–10 (outlining defendant's criminal history from
17   1999 to 2010).  As the government reasonably points out, it would be a very difficult task for this
18   District's Pretrial Services Officers to supervise a defendant with this history in the current
19   environment.  *Id*. at 11–12.
20           In sum, the court finds the applicable § 3142(g) factors including the need for
21   adequate deterrence and the need to protect the public from further crimes do not weigh in favor
22   of defendant.
23           B.    18 U.S.C. § 3142(i) Analysis
24           Courts have routinely rejected temporary release under § 3142(i) for preparation of
25   a defense alone.  In assessing that provision in this case in the context of alleged barriers to
26   effective assistance of counsel posed by defendants' custodial arrangements, this court has
27   previously explained: "Not every restriction on counsel's time or opportunity to investigate or to
28   consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right

to counsel." Tentative Ruling & Order, ECF No. 274, at 3 (quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (citation omitted)). It is hornbook law that "[t]he Sixth Amendment does not guarantee a meaningful relationship with counsel." *Id.* (citing *Morris*, 461 U.S. at 13–14). Additionally, any release under § 3142(i) must be "temporary" and "necessary" to complete defendant's trial preparations. 18 U.S.C. § 3142(i).

With respect to defense preparation as a compelling reason for pretrial release, defense counsel argues restrictions on visitation at the Sacramento County Jail, put in place in light of COVID-19, mean that he cannot currently pass documents to defendant. Mot. at 17. Moreover, defense counsel is following the Federal Defender's current guidance to its own staff prohibiting legal visits to the Jail at this time. *Id.* As a result, defense counsel claims he "cannot effectively prepare the defense in this case." *Id.* While accepting the stringency of the public health measures currently in effect, the court concludes defense counsel has not provided adequate reasons to support a finding that defendant's release is "necessary" for trial preparation. Opp'n at 18. In particular, defense counsel has not shown he is unable to mail documents to defendant or talk confidentially by phone with his client such that temporary limits on in-person prison visits entirely prevent defense counsel's adequately working to prepare defendant for trial in this complex multi-defendant case. *Id.* at 19. Additionally, defense counsel has not addressed why less "drastic measures," such as making additional arrangements to communicate with his client remotely,[3] are not available to allow him to make progress in adequately preparing defendant for trial. *Id.* at 18. In sum, defense counsel has not demonstrated why preparation of his client's defense is a "compelling reason" necessitating defendant's release at this time.

Defendant also claims the COVID-19 pandemic itself is a "compelling reason" to grant temporary release, in light of defendant's health conditions. Mot. at 17. To support this claim, defendant argues he is particularly susceptible to contracting coronavirus because he is 40

---

[3] The court notes that, as the court has adapted to continue essential proceedings and operations that comply with public health orders and advisories regarding COVID-19, the court itself and the Federal Defender's Office have developed methods to facilitate defense attorneys' confidential communications with their clients. It is not clear to the court from defendant's motion that counsel has pursued all the options currently available to him.

7

years old, has asthma, and the California Department of Corrections and Rehabilitation (CDCR) previously characterized him as "high risk medical" in evaluating him for purposes of his incarceration in a state prison subject to his current state sentence. Mot. at 3. Defendant has provided his CDCR medical records, which appear on the docket under seal; the records confirm his history of asthma at the time of his CDCR intake, his high risk status determination, and the medications he is prescribed for asthma. ECF No. 400 (sealed), at 2, 4. Defendant also provides affidavits from two medical doctors discussing prison conditions generally during the COVID-19 pandemic. Ex. A, Beyrer Decl., ECF No. 403-1; Ex. B, Williams Decl., ECF No. 403-2. In opposition, the government notes defendant does not claim to be infected with COVID-19 and makes no claim he has been denied necessary medical treatment or care for exposure to COVID-19, or for any other medical condition. Opp'n at 19–20.

Defendant has provided sufficient information in the form of his medical records to demonstrate that he has a history of asthma. This information, while relevant, does not provide a sufficient basis to grant the extraordinary remedy defendant seeks by his motion. As a threshold matter, defendant's age, 40, does not qualify him as a high-risk individual according to the Centers for Disease Control. *See https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html* (last accessed on April 30, 2020). Additionally, the record does not make clear how severe defendant's asthma is and whether it is "well-controlled" with medication or other forms of care. The two doctors' declarations defendant provides speak only to general prison conditions during the COVID-19 pandemic, or conditions in other states' correctional facilities; they do not provide any particularized information related to defendant's treatment or medical conditions. On this record, the court concludes defendant's medical condition is not a compelling reason that necessitates his release.

C.   Constitutional Claims and Claims for Civil Relief

In addition to his motion based on 18 U.S.C. § 3142, defendant makes a few additional arguments based on the Fifth and Eighth Amendments to the United States Constitution. He argues the conditions of his confinement are punitive because of the health risks associated with COVID-19 and therefore violate the Due Process Clause of the Fifth Amendment.

8

Mot. at 13. He also claims he is at an unreasonable risk of contracting COVID-19 while in jail, with that risk constituting an Eighth Amendment violation; he relies on a number of cases applying the Eighth Amendment to prisoners at risk of contracting other viruses or being exposed to toxic substances. Mot. at 15 (citing *Helling v. McKinney*, 509 U.S. 25 (1993) (tobacco smoke); *Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995) (asbestos); *Allen v. Kramer*, 2016 WL 4613360 (E.D. Cal. Aug. 17, 2016) (Valley Fever); *Shabazz v. Beard*, 2018 WL 1071173 (E.D. Cal. Feb. 2018) (Valley Fever); *Jackson v. California*, 2015 WL 5522088 (E.D. Cal. Sept. 17, 2015)). The government is correct that defendant's reliance on Fifth and Eighth Amendment precedent is "misplaced" and "inapposite." Opp'n at 12–15. Most of the cases on which defendant relies address civil rights claims by convicted prisoners filed under 42 U.S.C. § 1983 and do not resolve claims made under the federal Bail Reform Act. *Id.* The court has above addressed defendant's claims to the extent properly grounded in the Bail Reform Act.

In the event the court does not grant defendant's release, he requests in the alternative that the Sacramento County Sheriff be directed to implement eight "safety measures." Mot. at 18. These requests exceed the scope of the court's jurisdiction over pretrial confinement. Rather, they relate to conditions of confinement more appropriately challenged in a *Bivens* action after exhaustion of administrative remedies, instead of a criminal motion. *See, e.g., United States v. Luong*, 2009 WL 285211 at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties pursuant to 42 U.S.C. § 1983, rather than a motion in his criminal case." (citations omitted)); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

IV.     CONCLUSION

The motion is DENIED. Defendant's request to advance hearing of the motion is also DENIED as MOOT.

/////

/////

/////

9

1     This order resolves ECF No. 403.

2     IT IS SO ORDERED.

3  DATED: May 6, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE